UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

                     :

THOMAS FATTORUSO,

                     :

           Plaintiff,  :    12 Civ. 911 (KBF)

                     :

      -v-               :    OPINION & ORDER

                     :

HILTON GRAND VACATIONS COMPANY, LLC,  :

                     :

          Defendant.  :

                     :

------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   1 1 2012

KATHERINE B. FORREST, District Judge:

    Plaintiff Thomas Fattoruso, a New York citizen and
resident, brings this diversity action against defendant Hilton
Grand Vacations Company, LLC ("Hilton"), a Florida company,
levying claims of gender discrimination and retaliation under
the New York City Human Rights Law ("NYCHRL"), New York City
Admin. Code § 8-107 et seq. Hilton has moved to dismiss
plaintiff's complaint under Rule 12(b)(6).

    Hilton's motion raises a question of first impression:
does the NYCHRL's "uniquely broad and remedial purposes"
tolerate claims of gender discrimination (and retaliation) based
upon a consensual romantic relationship between other employees?
As discussed below, the Court answers that question, "No." In
addition, none of the purported "new" facts set forth in
plaintiff's proposed Amended Complaint change that answer.

Accordingly, defendant's motion to dismiss is GRANTED and plaintiff's motion to amend the complaint is DENIED.[1]

## BACKGROUND[2]

Plaintiff alleges that he began working for Hilton in or about November 2004, as a tour marketing coordinator at the Hilton New York location (also called the "57th Street location"). (Compl. (Dkt. No. 1) ¶ 11; see id. ¶ 17.) In that position, plaintiff was compensated both with a base salary and commissions from tours sold, but also had the ability to receive a bonus. (Id. ¶¶ 13, 16.)[3] By a certain point in time, plaintiff had allegedly been promoted to a "Master Marketing Coordinator," meaning that his base pay was $7.50 per hour with an additional $110 for every "qualified tour" booked (as opposed to $100 for those who were not as that level). (Id. ¶ 15.) Hilton's bonus structure was based on a number of variables having to do with meeting target sales objectives. (See id. ¶ 16.) According to plaintiff, he had achieved the record for

---

[1] Plaintiff failed to file a Notice of Motion for his Motion to Amend the Complaint, as required by Local Civil Rule 7.1(a)(1). Despite that procedural infirmity, the Court has nonetheless considered plaintiff's motion to amend based upon the novel question before the Court on the instant motion.

[2] The Court accepts as true all well-pleaded allegations in plaintiff's complaint and draws all reasonable inferences in his favor. See Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001).

The Court reviews the additional facts set forth in the relevant discussions of the claims in which they are added.

[3] According to plaintiff, he would not have been able to subsist--or support his family--on his base salary alone. (Compl. ¶ 14.)

monthly sales bonuses, generating $735,000 in a one month period.  (Id. ¶ 16(ii).)  It is further alleged that plaintiff "was one of the highest earning marketing coordinators at Hilton's 57th Street location" prior to November 2010.  (Id. ¶ 17.)

Approximately seven years after plaintiff started working for Hilton, in November 2010, plaintiff alleges that he began to notice a "non-platonic relationship" between Spencer Crandall, plaintiff's team leader, and Laurie MacGraw, another tour marketing coordinator and one of plaintiff's fellow team members.  (Compl. ¶ 19.)  Plaintiff alleges that signs of that relationship continued until approximately February 2011, including Crandall spending significant time at MacGraw's desk and MacGraw's flirting and giddiness in Crandall's presence.  (Id. ¶¶ 20, 20, 21.)  It is further alleged that Crandall and MacGraw's ongoing, romantic relationship (which is not alleged to be anything but voluntary) prompted Crandall to provide MacGraw with certain advantages--e.g., providing extra attention, including assisting MacGraw with bookings; crediting MacGraw with tours booked by another marketing coordinator; having Crandall cover for her during early or late shifts during which time any tours Crandall booked were credited to MacGraw.

(Id. ¶¶ 21, 22, 24, 25.)[4]  Plaintiff contests that treatment as not only "unfair," but also contrary to Hilton's company policy. (Id. ¶ 23.)  Plaintiff clearly and unequivocally alleges that "[n]one of the other team members" were given any of those same advantages.  (Id. ¶¶ 23, 24 (emphasis added).)

It is alleged that in February 2011 plaintiff and one of his junior team members who also found Crandall's behavior objectionable, Rob Ruocco, met with Michael O'Dwyer (plaintiff's supervisor (Compl. ¶ 30)) to bring the situation to his attention as well as the alleged "disparate treatment they were receiving from Mr. Crandall."  (Compl. ¶ 26.)  When nothing came of that meeting, plaintiff raised the issue with the Marketing Manager, Sara Yolac, who began an investigation which purportedly revealed "unusual things" about MacGraw's sales numbers and bonuses.  (Id. ¶ 27; see also id. ¶ 28 (regarding a discrepancy with a specific November 2010 sale).)  None of the investigations--including Yolac's, which was allegedly overtaken by O'Dwyer--yielded any tangible results or remedies.

Plaintiff was undeterred.  In March 2011, plaintiff alleges that he placed an anonymous phone call to the Hilton Human Resources ("HR") hotline in which he detailed his complaints about Crandall and MacGraw's relationship and "disparate

---

[4] It is alleged that another marketing coordinator, Rob Ruocco (also male), brought his concerns regarding Crandall's special treatment of MacGraw to plaintiff's attention--plaintiff being the "senior team member" on  his team. (Compl. ¶¶ 23, 24.)

treatment," as well as that O'Dwyer had investigated and taken no action. (Compl. ¶ 30.)  It is alleged that Hilton HR did not conduct a follow-up investigation. (Id. ¶ 31.)

Plaintiff pressed on, however--allegedly sending an email in April 2011 from an anonymous, unregistered e-mail address to a member of Hilton's HR Department, Lisy Martinez, lobbing the same complaints. (Id. ¶ 32.)  That too went unanswered and thus, it is alleged that Crandall's challenged behavior continued. (Id. ¶ 33.)

According to plaintiff, two events of note occurred in May 2011.  First, Martinez informed him--and, allegedly, other female employees--at a meeting that month that the investigation regarding Crandall's contested behavior had closed. (Compl. ¶ 34.)  Second, on May 26, 2011, Hilton eliminated plaintiff's position at the 57th Street location, purportedly due to "low sales numbers." (Id. ¶ 35.)  Plaintiff alleges that the reason for the elimination was pretextual since he was--and had consistently been--one of the higher sellers at his location. (Id. ¶ 36.)

Hilton did, however, offer plaintiff an opportunity to work at one of its other locations in New York--the Doubletree Lexington, which plaintiff alleges was "far inferior" "as the potential for sales and booking sales is significantly lower than at the Hilton New York." (Compl. ¶ 38.)  Plaintiff admits

that the commission and bonus structures are identical as between the 57th Street and Doubletree Lexington locations. (Id.)  Plaintiff accepted the position at the Doubletree Lexington (at which he was supervised by Crandall (id. ¶ 45)) and then, in August 2011, was assigned to split his shifts between that location and the Hampton Inn location in New York-- a location which, according to plaintiff, is "equally inferior" to the 57th Street location.  (Id. ¶ 39.)  That same month, plaintiff saw O'Dwyer (by chance, not plan) and informed him that he was unable to generate sufficient income to support his family at the locations he was placed.  (Id. ¶ 42.)[5] Subsequently, plaintiff was given shifts at the Hilton Times Square--an admittedly "better location" than the Doubletree or Hampton Inn, but still not, according to plaintiff, as good as the 57th Street location.  (Id. ¶ 43.)  Plaintiff alleges that by the end of August 2011, unable to meet the same numbers as he had at the 57th Street location, plaintiff was terminated.  (Id.; see also id. ¶ 44.)

---

[5] Plaintiff alleges that while at the 57th Street location, plaintiff earned approximately $115,000 annually, while at the Doubletree Lexington he purportedly earned only $25,000 annually.  (Compl. ¶ 48.)  Plaintiff's calculation of an annual salary for the Doubletree location is curious given that plaintiff only worked there for a period of approximately three months and there is no explication of how plaintiff arrived at the calculation. (See id. ¶¶ 35, 43-44.)

Based on those alleged facts, plaintiff asserts that he was subject to gender discrimination, a hostile work environment, and retaliation in violation of the NYCHRL.

## DISCUSSION

I.   DEFENDANT'S MOTION TO DISMISS

A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Alt. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id.  If the court can infer no

more than "the mere possibility of misconduct" from the factual averments--in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate.  Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 129 S. Ct. at 1950).

B.   The NYCHRL

In 2005, the New York City Council enacted the Local Civil Rights Restoration Act of 2005 (Local Law No. 85 of City of New York (2005) ("Local Law No. 85")), which amended the original NYCHRL.  Williams v. City of New York Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, 29, 31 (1st Dep't 2009).  As amended, the NYCHRL makes it unlawful for any employer "because of the actual or perceived . . . gender . . . of any person, . . . to discriminate against such person in compensation or in terms, conditions, or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  It also prohibits retaliation or discrimination "in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . .," among other things.  N.Y.C. Admin. Code. § 8-107(7).  However, the critical amendment to the NYCHRL came in the form of the provision regarding construction: the NYCHRL

shall be construed liberally for the accomplishment of
the uniquely broad and remedial purposes thereof,
regardless of whether federal or New York State civil

> and human rights laws, including those laws with
> provisions comparably-worded to provisions of this
> title, have been so construed.

N.Y.C. Admin. Code. § 8-130 (emphasis added).  Thus, the 2005
Restoration Act amended the NYCHRL to distinguish it from its
federal and state counterparts.  Indeed, section 1 of the
Restoration Act confirmed the need for such an amendment because
the City Council found that the provisions of the NYCHRL had
been "construed too narrowly to ensure protection of the civil
rights of all persons covered by the law."  Local Law No. 85,
§ 1.

   In that vein, the Restoration Act set the bar regarding its
federal counterpart, finding that "federal cases"--e.g., cases
regarding the same or similar types of claims under Title VII of
the Civil Rights Act of 1964 ("Title VII")--"may be used as aids
in interpretation only to the extent that the counterpart
provisions are viewed 'as a floor below which the [NYCHRL]
cannot fall, rather than a ceiling above which the local law
cannot rise' . . . ."  Williams, 872 N.Y.S.2d at 31 (quoting
Local Law No. 85, § 1).

   Thus, a court considering a claim under the NYCHRL must
"first identify the provision of the City HRL we are
interpreting and then ask, as required by the City Council:
What interpretation 'would fulfill the broad and remedial
purposes of the City's Human Rights Law'?"  872 N.Y.S.2d at 37

(citation omitted).  Yet despite the liberal construction
accorded claims under the NYCHRL, the Court bears in mind the
New York courts' admonition that, like its state and federal
counterparts, the NYCHRL does <u>not</u> "operate as a general civility
code."  <u>See, e.g.</u>, <u>Williams</u>, 872 N.Y.S.2d at 40.  It is also
mindful that "at a minimum, employment discrimination claims
[under the NYCHRL] must meet the standard of pleading set forth
in <u>Twombly</u> and <u>Iqbal</u>."  <u>Goodman v. Port Auth. of New York & New</u>
<u>Jersey</u>, No. 10 Civ. 8352, 2012 WL 664531, at *16 (S.D.N.Y. Feb.
29, 2012).

   C.   <u>Gender Discrimination Under the NYCHRL</u>

        Despite the liberal construction accorded claims under the
NYCHRL, New York courts agree that "[i]t is well-settled that in
determining employment discrimination claims under the New York
City Human Rights Law, federal standards are applied."  <u>Shah v.</u>
<u>Wilco Sys., Inc.</u>, 27 A.D.3d 169, 806 N.Y.S.2d 553, 559 (1st
Dep't 2005); <u>accord</u> <u>Nunez v. Mariners Temple Baptist Church</u>, No.
103308/07, 2009 WL 3254510, at *1 (N.Y. Sup. Ct. Oct. 8, 2009).
Thus, claims for employment discrimination under the NYCHRL are
subject to the burden-shifting analysis set forth by the Supreme
Court in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 802-803
(1973).  <u>See</u> <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 80 (2d Cir.
2010); <u>Leibowitz v. Cornell Univ.</u>, 584 F.3d 487, 498 n.1 (2d
Cir. 2009) ("gender discrimination claims brought pursuant to

the NYSHRL, and the NYCHRL are analyzed under the Title VII

framework"); Pilgram v. McGraw-Hill Cos., 599 F. Supp. 2d 462,

468 (S.D.N.Y. 2009); Farrugia v. N. Shore Univ. Hosp., 820

N.Y.S.2d 718, 726 (N.Y. Sup. Ct. 2006).  Under that framework, a

plaintiff bears the initial burden of establishing a prima facie

case of discrimination, and must demonstrate:  (1) membership in

a protected class; (2) qualifications for the position; (3) an

adverse employment action, and (4) circumstances giving rise to

an inference of discrimination.  Collins v. New York City

Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).

     As the First Department of the New York Appellate Courts

made clear in Williams (on which plaintiff relies heavily in his

opposition papers):

> the primary issue for a trier of fact in . . . terms-
> and-conditions cases, is whether the plaintiff has
> proven by a preponderance of the evidence that she [or
> he] has been treated less well than other employees
> because of her [or his] gender.

872 N.Y.S.2d at 39 (emphases added).  Nothing in the

Complaint demonstrates that plaintiff was deprived of the

same purported advantages as MacGraw because of plaintiff's

gender.  Indeed, the allegations show that all employees--

regardless of gender--were deprived of the advantages

MacGraw had simply because they were not engaged in any

type of paramour relationship with Crandall.  (See Compl.

¶¶ 23 ("None of the other team members received, or were

11

offered, this type of assistance in order to reach their sales goals." (emphasis added)), 24 (same).)  At bottom, the "advantages" of which plaintiff complains he was deprived would be viewed by a reasonable employee as a function of the purported paramour relationship between Crandall and MacGraw, completely unrelated to plaintiff's gender.  Cf. Short v. Deutsche Bank Secs., Inc., 79 A.D.3d 503, 901 N.Y.S.2d 64, 67 (1st Dep't 2010) ("The various complaints about Kim's conduct in the workplace were nothing more than non-actionable petty slights and minor inconveniences, which in any event may be viewed by a reasonable employee as a function of Kim's management style, unrelated to gender discrimination." (citation omitted)).

With respect to gender-based claims, the First Department advised in Williams:

> a focus on unequal treatment based on gender--
> regardless of whether the conduct is 'tangible' (like
> hiring or firing) or not--is in fact the approach that
> is most faithful to the uniquely broad and remedial
> purposes of the local statute.  To do otherwise is to
> permit far too much unwanted gender-based conduct to
> continue befouling the workplace.

872 N.Y.S.2d at 40 (emphasis added).  Although that certainly counsels in favor of viewing plaintiff's discrimination claim charitably, and the argument that plaintiff could never "play the game" that MacGraw "played" with Crandall because he

12

(plaintiff) is a man skims the bounds of the NYCHRL, the Court is strained to accept the theory that plaintiff did not get the same advantages as MacGraw because he is a man.

The Second Circuit squarely addressed the "paramour preference" theory of gender discrimination in the Title VII context in DeCintio v. Westchster County Medical Center, 807 F.2d 304 (2d Cir. 1986). Although that case, given that it is based upon federal law, sets the "floor" for the type of conduct actionable under the NYCHRL, the reasoning there is instructive here. Based upon, inter alia, the Supreme Court's rationale that "[t]he proscribed differentiation under Title VII . . . must be a distinction based on a person's sex, not on his or her sexual affiliations," id. at 306-07 (citing Los Angeles Dep't of Water & Power v. Manhart, 435 U.S. 702, 707 n.13 (1978)), the Second Circuit in DeCintio held that it could "adduce no justification for defining 'sex,' for Title VII purposes, so broadly as to include an ongoing, voluntary, romantic engagement," ergo, a Title VII gender discrimination claim premised upon a "paramour preference" is not cognizable, id. at 307, 308 ("In sum, we hold that voluntary, romantic relationships cannot form the basis of a sex discrimination suit under . . . Title VII"); see also id. at 306 (holding that an expansion of the word "sex" in Title VII to encompass "sexual liaisons" and "sexual attractions" is "wholly unwarranted").

Thus, the Court found that "[plaintiffs] were not prejudiced because of their status as males; rather, they were discriminated against because Ryan preferred his paramour. [Plaintiffs] faced exactly the same predicament as that faced by any woman applicant for the promotion . . . ." Id. at 308.  See also Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 517-19 (S.D.N.Y. 2010).

Thus, where, as here, there is no indication that plaintiff was discriminated against based upon his gender (rather than Crandall's romantic preference for MacGraw), a claim for gender discrimination must fail under the NYCHRL.  See Farrugia, 820 N.Y.S.2d at 727.[6]

D.   Sexual Harassment Under the NYCHRL

Plaintiff claims that the Complaint sets forth a claim for sexual harassment.  Although there is nothing within the four corners of the Complaint even suggesting as much, and although it is well-established that a plaintiff may not amend his pleading with allegations in an opposition to a motion to dismiss, see In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001), given the novelty of the question before the Court and the preference for resolving all

---

[6] In addition, it of course bears mentioning that plaintiff's assumption that if he was female he would have had--or been invited to have--a romantic relationship with Crandall is highly speculative--on numerous grounds.

claims simultaneously if possible, this decision will address the purported sexual harassment claim here.

Sexual harassment may be established via one of two theories:  (1) quid pro quo; or (2) a hostile work environment. See In re Father Belle Community Center, 221 A.D.2d 44, 624 N.Y.S.2d 739, 744 (4th Dep't 1996); cf. Tong v. S.A.C. Capital Mgmt., 835 N.Y.S.2d 881, 884 (N.Y. Sup. Ct. N.Y. Cnty. 2007) (NYCHRL).  In opposition to the motion to dismiss, plaintiff asserts that the Complaint puts forth a harassment claim under both theories.  (See Pl.'s Mem. of Law In Opp'n to Def.'s Mot. to Dismiss the Compl. & In Support of Pl.'s Mot. to Amend (Dkt. No. 14) at 16-19.)  As discussed below, the Court finds that neither it--nor the proposed Amended Complaint--plausibly allege harassment under either.

With respect to the former theory:

> Quid pro quo harassment occurs when unwelcome sexual conduct--whether sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature--is used, either explicitly or implicitly, as the basis for employment decisions affecting compensation, terms, conditions, or privileges of the complainant's employment.

In re Father Belle, 624 N.Y.S.2d at 744.  The main question for the court on a quid pro quo theory is whether the supervisor has conditioned (either expressly or implicitly) benefits or advantages based upon the acceptance or denial of sexual advances as to this plaintiff.  Id.

As to the latter, a "hostile work environment" for purposes of the NYCHRL is one where there is "differential treatment" period. Williams, 872 N.Y.S.2d at 38. In other words, all that is required to sustain a NYCHRL "hostile work environment claim" is "unequal treatment" based upon membership in a protected class. Id. Questions of "severity" or "pervasiveness" go to damages only--not to liability. Id. at 76.

The Court finds plaintiff's assertion that the Complaint states a claim for sexual harassment under either theory a true stretch. Taking them in reverse order, on the second theory, the Complaint simply uses the talismanic words "hostile work environment" (Compl. ¶ 54), but nowhere provides "enough facts to state a claim to relief that is plausible on its face." Starr, 592 F.3d at 321. As discussed at length above, there is nothing that indicates that plaintiff was treated "unequally" based upon his gender, but rather all facts alleged point to unequal treatment based upon a lack of romantic relationship with Crandall.

Even the allegations in plaintiff's proposed Amended Complaint (see Dkt. No. 14-3) do nothing to advance the claim under this theory. In the Amended Complaint, plaintiff alleges that "several women" on his team told plaintiff that "they were disgusted by Mr. Crandall's sexual behavior" and they found the advantages Crandall conferred on MacGraw "unfair." (Am. Compl.

¶ 27.)   While plaintiff's concern for protecting not only his interests, but those of his female colleagues is commendable, this Court finds that such allegations only undermine plaintiff's claim further.   That additional allegation simply re-states plaintiff's position that _everyone_ on his team at the Hilton 57th Street location took umbrage at the romantic relationship between Crandall and MacGraw (and any advantages flowing to MacGraw therefrom)--_i.e._, nothing about the alleged "hostile work environment" was specific to, or because of, his being male.   Plaintiff's allegations in both the Complaint and proposed Amended Complaint fail to support this theory because they fail to allege specific acts to support a claim that the work environment was hostile to _men_--"unfairness" does not equate to hostility, no matter how inequitable.

As to the former theory, the Complaint does not even use the talismanic words "quid pro quo" and the Complaint is devoid of anything alleging that Crandall conditioned job benefits on acceptance of sexual advances.   Indeed, there is no allegation that even the purported job benefits MacGraw received from Crandall were conditioned upon any act of their consensual, romantic relationship.

The "new" facts set forth in plaintiff's proposed Amended Complaint do nothing to salvage plaintiff's claim under that

theory.  Specifically, the proposed Amended Complaint alleges

that

> Angie Barracliffe believed, as she told Elsie Namnath,
> that she could get work benefits from Mr. Crandall if
> she decided to begin a sexual relationship with him,
> as Mr. Crandall had started showing up regularly at
> her desk a few minutes before the end of her 9PM or
> 10PM shift, and spending extensive time chatting with
> her.

(Am. Compl. (Dkt. No. 14-3) ¶ 30.)  That belief on its own does

not take plaintiff's quid pro quo claim "across the line from

conceivable to plausible."  See Twombly, 550 U.S. at 570.  This

Court agrees with Judge Lynch's reasoning in Krasner v. HSH

Nordbank AG, 680 F. Supp. 2d 502 (S.D.N.Y. 2010),[7] that

allegations that "an atmosphere [is] discriminatorily hostile

for a man simply by virtue of its being bad for woman" do not

adequately state a claim.  Id. at 515.  Although Krasner

addressed claims under Title VII, the male plaintiff's theory

there mirrors plaintiff's here.  Notably, however, the plaintiff

in Krasner proffered significantly more in support of his claim

than plaintiff does here--e.g., a "culture of widespread sexual

favoritism" stemming from "several male manager's open, public

intimate relationships with [female] subordinates whom they

later favored in the work place," allegations that the plaintiff

was cajoled into going to a strip club with his supervisor.  Id.

at 508-09.  However, the Krasner Court held that plaintiff's

---

[7] The Hon. Gerard E. Lynch, United States Court of Appeals for the Second
Circuit, sat by designation in Krasner.  680 F. Supp. 2d at 507 n.*.

claim of a hostile work environment on that theory with detailed

allegations that women were treated generally in the workplace

as "sexual playthings" failed.  Id. at 515.  Although that Title

VII case only sets the "floor" for plaintiff's harassment claims

here, see Local Law No. 85 § 1, the same rationale applied in

Krasner requires this Court not to open the door to plaintiff's

quid pro quo claim here:

> [plaintiff's] concern for a woman's right to be free
> of workplace discrimination, and offense taken upon
> being surrounded by conduct believed to impinge on
> that right, admirable as it may be, does not make
> [plaintiff] himself a victim of gender-based
> discrimination . . .

Krasner, 680 F. Supp. 2d at 515.[8]  With the allegation that he

could "never play [that] game"--i.e., trading a sexual

relationship for workplace benefits--it is almost as if

plaintiff is claiming discrimination based upon his lack of

ability to be discriminated against.  That could not be the type

of claim the NYCHRL contemplated would fall under even its

"liberal" auspices.  If this Court allowed plaintiff's claims to

proceed, it would be condoning claims by any and every male

employee any time one of their female peers suspected that

sexual favors could be traded for workplace advantages.  Cf.

---

[8] This Court has the same tangential concerns as did the court in Krasner
regarding "whether a male employee would have standing to pursue such a
third-party discrimination claim."  680 F. Supp. 2d at 515 n.7 (citing cases
noting skepticism over whether male employees have prudential standing from
pursuing claims based upon discrimination against women within the
workplace).

Krasner, 680 F. Supp. 2d at 519 ("In the absence of an
objectively hostile environment oppressing [plaintiff] because
of his sex, his discrimination claim must be dismissed."). That
does not advance the "uniquely broad and remedial purposes" of
the NYCHRL. Accordingly, plaintiff's sexual harassment claim
fails.

     E.   Retaliation Under the NYCHRL

As with discrimination claims under the NYCHRL, claims of
retaliation under the NYCHRL must be evaluated with an eye
towards the statute's "uniquely broad and remedial purpose."
See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d
Cir. 2009); accord Melie v. EVCI/TCI College Admin., 374 Fed.
Appx. 150, 153-54 (2d Cir. 2010). However, the same analysis
employed for retaliation claims under Title VII applies to
retaliation claims under the NYCHRL. Anderson v. Davis Polk &
Wardwell LLP, --- F. Supp. 2d ---, 2012 WL 734120, at *13
(S.D.N.Y. Mar. 6, 2012). To establish a retaliation claim under
the NYCHRL, a plaintiff must demonstrate a prima facie case
that: (1) he participated in a protected activity known to the
defendant; (2) the defendant took an employment action that
disadvantaged the plaintiff; and (3) that a causal connection
exists between the protected activity and the alleged adverse
employment action. Farrugia, 820 N.Y.S.2d at 727; accord Patane
v. Clark, 508 F.3d 106, 112 (2d Cir. 2007); Bermudez v. The City

of New York, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011).  A

plaintiff engages in a protected activity when he "oppose[s] any

practice made an unlawful employment practice by [the NYCHRL],

or because [he] has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or

hearing under [the NYCHRL]."  Bermudez, 783 F. Supp. 2d at 575

(quotation marks and alterations omitted).

    The retaliation or discrimination complained of under

the NYCHRL's retaliation provision

> need not result in an ultimate action with respect to
> employment . . . or in a materially adverse change in
> the terms or conditions of employment . . ., provided,
> however, that the retaliatory or discriminatory act or
> acts complained of must be reasonably likely to deter
> a person from engaging in protected activity.

N.Y.C. Admin. Code § 8-107(7); see also Mayer v. Emigrant

Bancorp, Inc., 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) ("The

elements of retaliation under the NYCHRL differ only in that the

plaintiff need not prove any adverse employment action; instead,

he must prove that something happened that would be reasonably

likely to deter a person from engaging in protected activity.").

Thus, "[u]nlike the federal standard which requires that the

manifestations of retaliation be material, under the City's

Human Rights Law, the 1991 Amendment made it clear that it was

illegal to retaliate in any manner."  Farrugia, 820 N.Y.S.2d at

727 (quotation marks omitted).

To be a protected activity, a plaintiff need not establish that the conduct opposed in his complaint was expressly illegal only that the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.  Mayers, 796 F. Supp. 2d at 448.  Reasonableness is the hallmark of that standard:  an employer must have understood that the plaintiff's disagreement was with an activity prohibited by law.  Id. ("In order for a complaint to form the basis for a retaliation claim [under the NYCHRL], however, the employer must have understood, or could reasonably understood, that the plaintiff's opposition was directed at conduct prohibited by the employment discrimination laws." (quotation marks omitted and emphasis added)).  The allegations in the Complaint do not meet that standard.

First, plaintiff alleges that he was terminated in order to "conceal inappropriate conduct directly in violation of company policy." (Compl. ¶ 44 (emphasis added).)  But a violation of Hilton's internal policies does not ergo amount to a violation of federal, state, or local law.  (It may, but does not necessarily and there is no indication that it did here.)  In other words, although plaintiff does not provide detail in his complaint regarding his grievances to the Hilton HR Department (which in itself may doom his claim because it does not meet the strictures of Rule 8 of the Federal Rules of Civil Procedure or

of Twombly and Iqbal), his allegations show that he did not have a reasonable good faith belief that such activity violated the law--but rather violated company policy.  That is insufficient to support his retaliation claim.  See Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999) (requiring a plaintiff to have a reasonable, good faith belief that the employment practice complained of is unlawful in order to demonstrate participation in a protected activity); Sullivan-Weaver v. New York Power Auth., 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000).

Second, there is no indication in the Complaint that plaintiff's complaints could have put Hilton on notice that he was complaining about unlawful behavior.  Plaintiff was complaining about benefits derived from a consensual, romantic relationship.  As discussed at length above, the law does not prohibit that conduct and thus, it would not be reasonable for defendant to understand that plaintiff's opposition to Crandall and MacGraw's relationship violated the law.  See Krasner, 680 F. Supp. 2d at 521.

Plaintiff's "new" allegation on his retaliation claim in the proposed Amended Complaint undercuts his retaliation claim. There he alleges that while employed by Hilton, he "received mandatory annual trainings" regarding workplace discrimination, harassment, and retaliation.  (Am. Compl. ¶ 24.)  During those

trainings, Hilton's employees were informed that "sexual innuendos" and "managers using their position for non-work related gains such as dates or sex" were "inappropriate."  (Id. ¶ 24 (emphasis added).)  But just as a violation of company policy does not equate to conduct being unlawful, the same holds true for conduct that is inappropriate.  Nothing about "inappropriate" conduct would put Hilton on notice that complaints about a consensual, romantic relationship (and alleged "disparate treatment" deriving therefrom) is unlawful. See Krasner, 680 F. Supp. 2d at 521; Mayers, 796 F. Supp. 2d at 450.

Further, without any information about precisely what plaintiffs complained at the alleged meetings with O'Dwyer and others at Hilton except for the broad, conclusory allegations in the Complaint and the Amended Complaint, he fails to state a claim plausible on its face, as required.  See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 570.  Particularly because plaintiff alleges numerous times that he believes that no action was taken upon his complaints, it was incumbent upon him to--at a minimum--explain to those at Hilton to whom he complained that he was taking umbrage with what he perceived to be illegal activity.  Mayers, 796 F. Supp. 2d at 448.  Without allegations that he did so, he has failed to meet his burden to sustain his

retaliation claim.   See id. (dismissed NYCHRL retaliation
claim).

II.   PLAINTIFF'S MOTION TO AMEND

    Under Rule 15(a) of the Federal Rules of Civil Procedure,
requires that leave to amend be freely granted "when justice so
requires."  Fed. R. Civ. P. 15(a)(2).   "However, it is well
established that leave to amend a complaint need not be granted
when amendment would be futile."  Ellis v. Chao, 336 F.3d 114,
127 (2d Cir. 2003).  Futility turns on whether an amended
pleading could withstand a motion to dismiss pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure.  Ricciuti v.
New York City Transit Auth., 941 F.3d 119, 123 (2d Cir. 1991).

    As detailed above, the additional allegations in
plaintiff's proposed Amended Complaint do not--and cannot--
salvage any of plaintiff's sexual discrimination, sexual
harassment (under either a quid pro quo or hostile work
environment theory), or retaliation claims.  Thus, amendment of
the complaint would be futile and plaintiff's motion to amend
the complaint must be denied.

CONCLUSION

    For the aforementioned reasons, defendant's motion to
dismiss plaintiff's discrimination and retaliation claims under
the NYCHRL is GRANTED; plaintiff's motion to amend the complaint
is DENIED.

25

The Clerk of the Court is directed to terminate any pending motions and terminate the action.


SO ORDERED:

Dated: New York, New York
       June _11_, 2012


_____
       Katherine B. Forrest
       UNITED STATES DISTRICT JUDGE